Peter Garcia, Pro Se
1969 S Alafaya Trail
#231
Orlando, Florida  32828
clintonville@gmail.com

# THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# ORLANDO, FLORIDA

FILED 2021 DEC -3 PM 3:13

| | |
|---|---|
| PETER GARCIA,<br><br>Plaintiff,<br><br>vs.<br><br>COMMUNITY HEALTH CENTERS, INC.,<br><br>Defendant | Case No.:<br><br>1) AGE DISCRIMINATION IN EMPLOYMENT ACT (29 U.S.C § 621 ET SEQ)<br><br>2) RETALIATION<br><br>DEMAND FOR JURY TRIAL |

## NATURE OF THE ACTION

This is an action under the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.*, as amended, ("ADEA") and Title I of the Civil Rights Act of 1991, 42 U.S.C. §1981a. It is filed to correct unlawful employment practices on the basis of age, to redress interference with rights protected under the ADEA and provide Peter Garcia appropriate relief who was adversely affected by such practices. Petitioner, Peter Garcia, (Garcia) by way of this complaint alleges Respondent, Community Health Centers, Inc. (CHC) discriminated against him based on his age during the application process by failing to interview or hire him when he applied for employment at CHC. Then Defendant retaliated against Garcia when he filed

complaints with the EEOC regarding the discriminatory actions of CHC. Dr. Garcia is an experienced board-certified physician with an extensive work history in clinical and administration medicine. He has previously been an employee of Community Health Centers as the Medical Director.

## JURISDICTION AND VENUE

1. Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) and Section 707 of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3) and § 2000e-6, and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a. This Court has jurisdiction over the federal claims under 28 U.S.C. § 1331. This Court has jurisdiction over the state law claims pursuant to the doctrine of supplemental jurisdiction, 28 U.S.C. § 1367(a). This action is also authorized and instituted pursuant to Section 7(b) of the Age Discrimination in Employment Act of 1967, as amended, 29 U.S.C. § 626(b) (the "ADEA"), which incorporates by reference Sections 16(c) and 17 of the Fair Labor Standards Act of 1938 (the "FLSA"), as amended, 29 U.S.C. §§ 216(c) and 217.

2. The employment practices alleged to be unlawful were committed in Orlando, FL which is within the jurisdiction of the United States District Court for the Middle District of Florida.

## PARTIES

3. Plaintiff, Peter Garcia (Garcia) is a resident of Orange County Florida.

4. Defendant, Community Health Centers, Inc. (CHC) is a Federally Qualified Health Center which provides medical care for patients in Orlando, Florida.

5. At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Sections 101(3) and 101(7) of the ADA, 42 U.S.C. §§12111(5), (7), within the meaning of Sections 11(b) and (h) of the ADEA, 29, U.S.C. §§ 630(b), (g) and (h).

6. At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADEA.

7. At all relevant times, Defendant has continuously been doing business in the State of Florida and has continuously had at least 20 employees.

## ADMINISTRATIVE PROCEDUES

8. More than thirty days prior to the institution of this lawsuit, Dr. Garcia filed a charge with the EEOC alleging violation of the ADEA and ADA.

9. On September 9, 2021 the EEOC issued a Dismissal and Notice of Rights letter without finding the Defendant was in violation or in compliance with the statutes for which violations have been alleged. (Attach pg. 1)

10. All conditions precedent to the institution of this lawsuit have been fulfilled.

## FACTS COMMON TO ALL CLAIMS

11. Plaintiff, Peter Garcia, applied for two positions at CHC between December 5, 2019 and March 2020. This case references the actions involved in his application and rejection for the second position, the Quality Outcomes Coordinator.

12. The first position, Chief of Quality, was advertised on the National Association of Community Health Centers web site in December 2019.

13. The position of Chief of Quality sought a physician with experience in Quality of Care, Cost Control and knowledge regarding Medicare and Medicaid.

13. It must be noted that Garcia had previously served as the Medical Director at Community Health Centers for three years. His duties there included directing the Quality program. He received significant praise regarding the improvements he made in the program from his supervisor, Mark Williams as well as the Board of Directors. He has significant work experience in these areas.

14. On December 5, 2019 Garcia sent his first application to CHC for the Chief of Quality position.

15. Within one week on December 12, 2019 Garcia received an email from Sophia Median, HR Manager, informing him he would revive no further consideration.

16. Three months later in March 2020 Garcia noted the position had not been filled and was again being advertised.

17. He therefore sent a second Resume in response to CHC regarding the open Chief of Quality position on March 3, 2020.

18. There was no further communication from CHC regarding the Chief of Quality position.

19. On or about April 8, 2020 Plaintiff filed a complaint with the EEOC regarding his rejection for the Chief of Quality position. The fact that he had performed the job previously with excellent recommendations is evidence that he was qualified for the current position See <u>Geiger v. Tower Automotive, 579 F.3d 614.</u> The fact that he had received no explanation for his exclusion provided the inference of discriminatory actions by CHC.

20. On October 4, 2020 Garcia noted a second position dealing with quality at CHC was advertised.

21. He submitted a Resume for the position of Quality Outcomes Coordinator (QOC).

22. The QOC position sought an individual that would assist with the Quality program at CHC in conjunction with the Chief of Quality.

23. Unlike the Chief of Quality that required a medical degree, this position sought a person with quality experience. The preferred candidate would have a Masters Degree in Healthcare Administration, although that was not a requirement. Garcia has both a Masters Degree in Healthcare Administration and a law degree in addition to his medical degree. He performed a fellowship in Healthcare Administration and Quality after his master's program.

24. As previously discussed coordinated the quality program at CHC for three years. He has extensive experience in quality management of healthcare organizations. He is a Certified Healthcare Quality Professional.

25. Approximately five days after application Garcia received an email stating that the search had been closed. There is no question that Garcia's application had been received and viewed before closure of the search.

26. If any job offers were made for the QOC position before October 10, 2020, none were accepted. Unlike the Chief of Quality position where Defendant forwarded the Resume of multiple candidates, CHC did not forward any information regarding the applicants screened in the first search.

27. On December 29, 2020 Garcia again noted that QOC position had been reopened. For a second time he sent a Resume to Human Resources at CHC.

28. CHC Human Resources answered his application by email stating the position was open to internal candidates only. No rational was provided for the limitation placed on applicants. Garcia then completed an internal application form.

29. There was no further communication between the parties.

30. In January 2021 Garcia filed a second charge of Age Discrimination and Retaliation based on his interactions with CHC with regards to his application for the QOC position.

GARCIA V COMMUNITY HEALTH CENTERS, INC.
OPENING BRIEF

6

31. Garcia's applications for the Chief of Quality position and QOC positions represent the protected activity that is required as part an AEDA or Retaliation charge.

32. The failure to consider Garcia's application for the QOC position involved retaliation for filing an earlier EEOC complaint. The rationales presented by Defendant in its Position Statement to the EEOC, spelling errors and no desire for the position are properly labeled pretext.

## PLEADING STANDARD

Under Federal Rule of Civil Procedure 8(a)(2), a Complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This obligation "requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). To survive dismissal, the factual allegations must be "plausible" and "must be enough to raise a right to relief above the speculative level." Id. at 555. See also Edwards v. Prime Inc., 602 F.3d 1276, 1291 (11th Cir. 2010). In the current case the "facts" are very limited as the only communication with CHC was by email. The only information currently available includes Resumes of the applicants for the Chief of Quality position, not the QOC position and the position statements provided to the EEOC by CHC. Rather than adduce a prima facie claim in the complaint itself — before discovery,

often necessary to uncover a trail of evidence regarding the defendants' intent in undertaking allegedly discriminatory action, has taken place — a plaintiff need only "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz*, 534 U.S. at 512, 122 S.Ct. 992 (quoting *Conley*, 355 U.S. at 47, 78 S.Ct. 99). The prima facie case is "an evidentiary standard, not a pleading requirement." *Id.* at 510, 122 S.Ct. 992. A pleading drafted by a party proceeding unrepresented (*pro se*) is held to a less stringent standard than one drafted by an attorney, and the Court will construe the documents filed as a complaint and amended complaint liberally. *Jones v. Fla. Parole Comm'n*, 787 F.3d 1105, 1107 (11th Cir. 2015).

The Federal Rules **reject** the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits. Cf. *Maty v. Grasselli Chemical Co.*, 303 U. S. 197

## ADEA

Initially, a plaintiff must establish a prima facie case of discrimination under the ADEA through one of three generally accepted methods: by direct evidence of discriminatory intent; by meeting the four-pronged test set out for Title VII cases in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); or through statistical proof. Dr.

Garcia is not privy to any statistical information or direct information that implicates OCG for discrimination. Therefore he must proceed under the indirect four prong test.

This Circuit has adopted a variation of the four-pronged test set out for Title VII claims in <u>McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973),</u> that allows a plaintiff to establish a prima facie case under the ADEA with circumstantial evidence by proving: (1) that he is a member of the protected group; (2) that adverse employment action was taken against him, e.g. discharge, demotion, or failure to hire; (3) that he was replaced by a person outside the protected group, the position remained open or and (4) that he was qualified for the position for which he was rejected. <u>Castle v. Sangamo Weston, 837 F.2d 1550, 1558 (11th Cir.1988); Goldstein v. Manhattan Industries, Inc., 758 F.2d 1435, 1442 (11th Cir.),</u>

The 11th Federal Circuit Court's repeated eschewal of an overly strict formulation of the elements of a prima facie case, especially in age discrimination cases is well documented. Age, unlike race or sex, "is not a discreet and immutable characteristic of an employee which separates the members of the protected group indelibly from persons outside the protected group. Rather, age is a continuum along which the distinctions between employees are often subtle and relative ones." *Goldstein,* 758 F.2d

at 1142. As was recognized in *McCorstin v. United States Steel Corp., 621 F.2d 749, 754 (5th Cir.1980)*: "Seldom will a sixty-year-old be replaced by a person in the twenties.... Because the discrimination involves age, rather than sex or race, a requirement that the replacement be from a nonprotected group fails to take the reality of the working place into account." Thus, we have declined to hold that a plaintiff's inability to show that he was replaced by someone under forty is an absolute bar to the establishment of a prima facie case. *See, e.g., Castle, 837 F.2d 1550 (11th Cir.1988); Goldstein, 758 F.2d 1435 (11th Cir.1985); Pace v. Southern Ry. Sys., 701 F.2d 1383 (11th Cir.), cert. denied, 464 U.S. 1018, 104 S.Ct. 549, 78 L.Ed.2d 724 (1983);*

### Retaliation ADEA

The ADEA forbids age discrimination in the employment of persons at least forty years of age but less than seventy years of age. 29 U.S.C. § 621 *et seq.* The Eleventh Circuit has adapted to issues of age discrimination the principles of law applicable to cases arising under the very similar provisions of Title VII. *Carter v. City of Miami*, 870 F.2d 578, 581 (11th Cir.1989).

The substantive law of this Circuit dictates that a plaintiff alleging retaliation must establish a prima facie case by showing: (1) a statutorily protected expression, (2) an adverse employment action, and (3) a causal link between the protected expression and the adverse action. *Goldsmith v. City of Atmore*, 996 F.2d 1155,

1163 (11th Cir.1993). Once plaintiff has established a prima facie case of retaliation, the burden shifts to the defendant to rebut the presumption of retaliation by producing legitimate reasons for the adverse employment action.

The causal link in the [retaliatory discharge] formula [is not] the sort of logical connection that would justify a prescription that the protected participation in fact prompted the adverse action. Such a connection would rise to the level of direct evidence of discrimination, shifting the burden of persuasion to the defendant. Rather, we construe the `causal link' element to require merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated. *Simmons v. Camden County Board of Ed.*, 757 F.2d 1187, 1189 (11th Cir.), *cert. denied*, 474 U.S. 981, 106 S.Ct. 385, 88 L.Ed.2d 338 (1985). "At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took the adverse employment action." *Goldsmith*, 996 F.2d at 1163. In the current case Defendant was well aware of the protected expression of Garcia's applications,

## FIRST CLAIM FOR RELIEF
(Age Discrimination in Employment Act, 29 U.S.C. § 621 *et. seq.*)

For his Claims for Relief, Dr. Peter Garcia Alleges and incorporates paragraphs 1-32 for the ADEA.

33. To make a prima fascia case under the ADEA the plaintiff must demonstrate the following criteria have been met.

34. The plaintiff is *over forty years of age*. Dr. Garcia pleads that he is over 40 years of age. He meets this requirement.

35. The plaintiff is *otherwise qualified* for the position. The Quality Outcomes Coordinator position listed multiple requirements for the position. Garcia submitted a copy of the list with his application and it is attached to this complaint rather than discussing each element here.(Attach pgs. 2-3) Garcia has significant experience with quality. After completing his Masters in HealthCare Management he performed a fellowship in Healthcare Management and Quality. There he performed multiple studies and became a Juran Facilitator. The Resume submitted is attached as well as it lists all of these activities. He has been involved in quality programs in multiple organizations including CHC. (Attch pgs. 5-7) He is a certified Healthcare Quality Professional. Most importantly he was in charge of the Quality program at CHC for the three years he was the Medical Director. He received excellent reviews for his work there. This is something no other candidate can state.

36. *The plaintiff was not hired*. This is clear from the emails.

37. The position remained open after the plaintiff was dismissed as a candidate, the person hired was younger and less qualified *or* the circumstances under which the hiring occurred creates the inference of discrimination. See *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142, 120 S.Ct. 2097, 147

38. It is clear that this position was listed on more than one occasion. It was open for a significant time after Garcia's application. The Defendant states the position was open on June 24, 2020. Candidates were screened through September 11, 2020. Garcia's initial application was one of those Resumes.

39. The position was apparently offered to external candidate although Defendant has not disclosed who that candidate was, their age or their qualifications. No one was apparently hired after the initial opening. The position was closed for a period of time and then reopened. The rational offered by Defendant for closing the application process to internal candidates indicates pretext. Defendant admits that the position was originally open to both internal and external candidates. It is apparent that no qualified internal candidates were ever identified in the process.

40. Defendant has not identified the person who eventually assumed this position. Therefore comparison of Plaintiff's background with this person is not possible at this time. However the explanations presented by Defendant

41. In this case as a minimum the position remained open after Garcia's application and the circumstances under which the hiring occurred creates the inference of discrimination. The rationales presented for not considering Garcia for the QOC position as listed in its position statement to the EEOC creates the inference of discrimination. Plaintiff has submitted the Resume that was submitted to CHC to demonstrate his qualifications and to allow the trier of fact to search for the spelling and grammar errors Defendant relies on.

42. The effect of the practices complained of above has been to deprive Dr. Garcia and a class of applicants and employees of equal employment opportunities and otherwise to affect adversely their status as applicants.

## SECOND CLAIM FOR RELIEF
## RETALIATION

33. A plaintiff alleging retaliation must establish a prima facie case by showing: (1) a statutorily protected expression, (2) an adverse employment action, and (3) a causal link between the protected expression and the adverse action. _Goldsmith v. City of Atmore_, 996 F.2d 1155, 1163 (11th Cir.1993).

34. Garcia must first demonstrate that he was in a protected group. In the current case Garcia is over 40 years of age and is therefore in a protected group under the ADEA.

35. Once Garcia demonstrates that he is in a protected group he must demonstrate adverse action by an employer either after or contemporaneous with the employee's protected action.

36. Most Circuits all take an expansive view of the type of actions that can be considered adverse employment actions. See _Wyatt v. City of Boston_, 35 F.3d 13, 15-16 (1st Cir.1994) "Ultimate employment actions" such as hiring, firing, promoting and demoting constitute actionable adverse employment actions. See _Mattern v. Eastman Kodak Co._, 104 F.3d 702, 707 (5th Cir.1997) Therefore application for both the Chief of Quality and the Quality Outcomes

Coordinator positions constitute protected activity and his rejection for both constitute an adverse employment actions.

37. There can be little doubt that the first two elements of Retaliation have been satisfied.

39. The third element of retaliation requires a causal link between the protected activity and the adverse action. The `causal link' element requires merely that the plaintiff establish that the protected activity and the adverse action were not wholly unrelated. <u>Simmons v. Camden County Board of Ed.</u>, 757 F.2d 1187, 1189 (11th Cir.), In this case his applications were soon followed by actions limiting applications. This helps demonstrate the link.

40. In this case it is clear that Defendant knew that Garcia was over 40 years of age for several reasons. Defendant mentions that Garcia's work in quality at CHC was in the distant past in an attempt to discredit Garcia's work. However there is no attempt to discuss that work and compare it with other medical directors at CHC. Attempting to disparage work that was in the past is congruous with age discrimination.

41. There can be little question that Garcia's age was a prominent factor in his failure to be considered.

Pretext

A pretext is defined as a pretended reason for doing something that is used to hide the real reason. The plaintiff can usually provide sufficient evidence of

discriminatory intent by showing that the employer's proffered reason for the adverse action is false. If the plaintiff can show pretext, then the *McDonnell Douglas* framework "disappears," and "the sole remaining issue is discrimination. <u>Reeves v. Sanderson Plumbing Products,</u> 530 U.S. 133, 142-43, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000). Garcia does not need to demonstrate Pretext in the pleadings. The Prima facie case combined with sufficient evidence to disbelieve employer's explanation always creates a jury issue of whether employer intentionally discriminated. <u>Combs v. Plantation Patterns,</u> 106 F. 3d 1519 (CA11 1997) Pretext in this case can be demonstrated by the series of fact less naked assertions regarding Garcia. Those items such that his Resume had many spelling and grammar errors, although none were ever pointed out. Gregg Stewart's alleged statements that Garcia was difficult to get along with absent any affidavit from Stewart and Garcia never really wanted the jobs iare false and are properly termed as pretext.

## Summary

This case involves application for two quality positions at CHC, a former employer of Plaintiff. Although disparaged by Defendant, Plaintiffs' work and educational history demonstrates significant experience in these areas. Garcia, unlike any other candidate, enjoyed significant success as the Medical Director at CHC with his quality program reforms. The qualities listed on his employee evaluations including revenue recoupment, people development, innovation and

initiative are in no way time limited and would have been part of any return to work at CHC. Defendant's position as explained in its position statement involves a number of superficial naked assertions without any facts to support them. Plaintiff has included the Resume that was provided to Defendant so that it can be analyzed if needed for spelling and grammar errors that Defendant heavily relies upon in its derogatory rendition of the events.

Garcia was without question qualified for each position he applied for at CHC. The explanations provided for the Quality Coordinator are not believable and provide a reasonable suspicion of discriminatory actions.

Dated: November 26, 2021                    /s/Peter Garcia
                                            Peter Garcia, Pro Se